**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Abudlai S.,

Petitioner,

v.

Todd Blanche, Attorney General; Markwayne Mullin, Secretary of Homeland Security; David Venturella, Senior Official Performing the Duties of the Director of U.S. Immigration & Customs Enforcement; Marcos Charles, Acting Executive Associate Director for Enforcement and Removal Operations; David Easterwood, Field Office Director for Enforcement and Removal Operations; U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; Eric Klang, Sheriff of Crow Wing County Jail;

Respondents.

No. 0:26-cv-03942-KMM-LIB

**ORDER**

---

This matter is before the Court on the Verified Petition for a Writ of Habeas Corpus filed by Petitioner Abudlai S. ("Abdulai" or "Petitioner"). Pet., Dkt. 1. Abdulai has been detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") since he was arrested by ICE officers at a scheduled check-in on July 15, 2026. He claims that his continued detention is unlawful because he was arrested without a warrant and in the absence of the probable cause that would authorize a warrantless arrest under federal law. For the reasons that follow, the petition is granted.

## BACKGROUND

Abdulai is a native and citizen of Ghana who has lived in the United States since July 2021 when he entered the United States without inspection. Shortly after crossing the southern border on July 8, 2021, he was apprehended near Del Rio, Texas. Dkt. 9-5. Abdulai expressed a fear of returning to Ghana and was referred for a credible-fear interview with an asylum officer. On July 28, 2021, an asylum officer determined that he had established a credible fear of harm if he were removed to Ghana.[1] Dkt. 9-6. On August 2, 2021, the Department of Homeland Security ("DHS") released Abdulai from custody on parole under 8 U.S.C. § 1182(d)(5)(A), subject to reporting requirements, and he subsequently filed an application for asylum and withholding of removal. Dkt. 9-7 (Interim Notice Authorizing Parole). That application remains pending. Dkt. 9-1 at 3.

The same day DHS released Abdulai from custody, it served him with a Notice to Appear ("NTA") for removal proceedings, charging him as subject to deportation because he is inadmissible. *See* 8 U.S.C. § 1182(a)(6) (providing that an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible"); *id.* § 1182(a)(7) (classifying certain aliens without proper documentation as inadmissible). However, it appears that United States Citizenship and Immigration services did not

---

[1] The record reflects that Border Patrol Agent issued Abdulai a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1) on July 11, 2021. Dkt. 9-5. But when immigration authorities issued Abdulai a new Notice to Appear for removal proceedings on July 15, 2026, the § 1225(b)(1) order was vacated. Dkt. 9-4 at 1 ("☒Section 235(b)(1) order was vacated pursuant to: ☒ 8CFR 208.30").

previously file the August 2, 2021 NTA with the Department of Justice's Executive Office for immigration Review. Dkt. 9-1 at 2; Draves Decl. ¶ 9, Dkt. 9. Consequently, formal removal proceedings were never initiated for Abdulai.

After his release from custody in 2021, Abdulai received employment authorization from the government. Abdulai established his residence and got a job in North Dakota, where he lived for several years without incident prior to the events that precipitated this case. No evidence is before the Court indicating that Abdulai has any criminal history.

On July 15, 2026, Abdulai appeared at ICE's Enforcement and Removal Operations ("ERO") office in Grand Forks, North Dakota, for a scheduled check-in. After he arrived, ICE officers verified his identity and reviewed his immigration history. ICE agents then took Abdulai into custody, but exactly what took place and when is in dispute.

Abdulai alleges that "[n]o administrative warrant was presented to [him] before ICE placed him under arrest." Pet. ¶ 60. He takes the position that Respondents detained him first and any warrant relating to his arrest was not issued until after he had been arrested.

Respondents submitted evidence about the relevant sequence of events. Steven Draves, a Supervisory Detention and Deportation Officer ("SDDO") employed by ICE/ERO, provided a declaration dated October 2, 2026, in which he discusses the circumstances of Abdulai's arrest.[2] SDDO Draves states:

---

[2] In his declaration, SDDO Draves does not state that he was involved in or personally witnessed those events. Rather he states that he provided the declaration based on his "personal and professional knowledge" and his "review of records and systems maintained by ICE in the regular course of business." Draves Decl. ¶ 3. He also indicates that he received information from other agents and officers, *id.*, but he does not further clarify the particular source for any specific assertion within the declaration.

> On July 15, 2026, Petitioner reported to the ICE/ERO office in Grand Forks, North Dakota, for a scheduled check-in regarding his immigration status. After determining that the 2021 NTA had not been filed with the immigration court, an ICE/ERO Acting Supervisory Detention and Deportation Officer issued a Form I-200, Warrant for Arrest of Alien, and an ICE/ERO Deportation Officer served it on Petitioner, placing him under arrest.

Draves Decl. ¶ 10; *see also* Dkt. 9-2 (Form I-200 Warrant for Arrest of Alien)[3]

This account in SDDO Draves's declaration appears to be drawn from a report prepared by the ICE/ERO Deportation Officer ("DO") who was involved in the arrest, Travis Kautz. *See* Dkt. 9-1 (Form I-213, Report of Deportable/Inadmissible Alien). In his July 15, 2026 report, DO Kautz provides the following narrative:

> On July 15, 2026, … Abdulai reported to the Grand Forks, ND ICE/ERO office for his scheduled check-in. DO Kautz verified [his] identity with his immigration documents and his ND driver's license. DO Kautz conducted records checks on [Petitioner] and discovered that he was processed as an Expedited Removal with a Credible Fear claim by US Border Patrol in the Del Rio, TX sector on July 8, 2021. [Petitioner] was served a Notice to Appear by USCIS, however that charging document was never filed with EOIR.
> ***DO Kautz and (A) SSDO [sic] Wederquist escorted [Petitioner] to the processing room. DO Kautz informed [Petitioner] that he was under arrest and issued him an I-200 Warrant for Arrest of Alien*** and that his asylum claim will be heard by an immigration judge.

Dkt. 9-1 at 2 (emphasis added).

[3] DHS also issued a new Notice to Appear for Petitioner on July 15, 2026, again charging that he is subject to removal under § 1182(a)(6) and (a)(7). Dkt. 9-4 (July 15, 2026 Notice to Appear); Dkt. 9-1 at 4 ("On July 15, 2026, [Petitioner] was processed as a Notice to Appear and issued an I-200 Warrant for Arrest of Alien[.]").

After ICE took Abdulai into custody in North Dakota, he was transferred to Crow Wing County Jail in Brainerd, Minnesota. He has been in continuous immigration custody since his July 15, 2026 arrest. Abdulai filed his habeas petition through counsel on September 8, 2026. His petition included two causes of action, both of which claim that he was arrested without a warrant and that his arrest was not a lawful exercise of immigration officers' warrantless arrest authority under 8 U.S.C. § 1357(a)(2).[4]

**DISCUSSION**

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## I. Arrest Authority

There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be

[4] Count One of the petition is titled "Unlawful Detention" and references § 1357(a)(2) specifically. Pet. ¶¶ 67–74. Count Two of the petition has the heading "Deprivation of Liberty Without Due Process of Law," but this claim likewise hinges on whether his arrest complied with statutory authority. *See id.* ¶¶ 78–80. Therefore, the Court does not conduct a separate analysis for the two Counts in the petition. Respondents assert that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Resp. at 2, Dkt. 8. Petitioner has not raised a due process challenge concerning the application of that mandatory detention provision. Accordingly, this Order does not address that issue.

arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. 8 C.F.R. § 236.1(b)(1). Such a warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. *Id.*; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues a the same time or after the Department of Homeland Security issues an NTA."). Courts have held that an arrest is made "pursuant to" an I-200 warrant when the warrant is issued prior to that arrest. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be

obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

## II. Analysis

Petitioner's unlawful-arrest claim hinges first on whether he was arrested pursuant to a valid I-200 warrant issued prior to the point at which he was taken into custody. If he was not, the second question is whether Respondents had the probable cause required to arrest him without a warrant under § 1357(a)(2). As explained below, the Court finds it is more likely than not that Respondents arrested Petitioner first, then issued the warrant. And nothing before the Court demonstrates that Respondents had probable cause to make a warrantless arrest of Abdulai under § 1357(a)(2). Accordingly, the Court orders Petitioner's immediate release.

### *Arrest Prior to Issuance of Warrant*

The Court first addresses whether Abduali was arrested before the warrant was issued. This matters because a civil immigration arrest is not made pursuant to a warrant if the warrant was not issued until after the arrest took place. *Pina C.D.B.*, 2026 WL 810676, at *2. Ultimately, it is more likely than not that Petitioner was arrested prior to the issuance of the warrant.

The following facts in the record are clear and undisputed. Abdulai appeared for an ICE check-in in Grand Forks on July 15, 2026. DO Kautz verified his identity and then escorted him to the processing room at the Grand Forks ICE/ERO office. And that same day, Respondents issued a new NTA and a Form I-200 arrest warrant. Respondents arrested Abdulai that day and have kept him in immigration detention since. But these clear and undisputed facts do not resolve whether Petitioner is correct that the arrest preceded issuance of the Form I-200 warrant or Respondents are correct that the warrant was issued first and the arrest followed.

The best evidence in the record supports Petitioner's position. The Form I-200 warrant itself contains no time stamp, and the other documentary evidence provided by Respondents does not show exactly when each relevant event took place. The two agents identified in the arrest are DO Kautz, who completed the I-213 report describing Abdulai's arrest, and SDDO Kolton Wederquist, who signed the administrative warrant. And DO Kautz's I-213 report states that Abdulai was escorted to a processing room in the Grand Forks ICE/ERO office, informed that he as under arrest, and then the Form I-200 warrant was issued. Dkt. 9-1 at 2. Neither DO Kautz nor SDDO Wederquist provided an affidavit or declaration indicating that the events of July 15, 2026 took place in some other order. Thus, even though DO Kautz's I-213 report is itself an unsworn statement by a witness who has provided no testimony for purposes of this proceeding, the I-213 report is the most contemporary and first-hand indication of what occurred that Respondents have submitted. And it indicates the arrest took place before the warrant was issued.

Although SDDO Draves's declaration implies that the issuance of the Form I-200 warrant preceded Abdulai's arrest, *see* Draves Decl. ¶ 10, his account bears little, if any, evidentiary weight. Nothing in the record suggests that SDDO Draves was involved in or personally witnessed Abdulai's arrest, so he cannot what occurred on July 15 from his own first-hand knowledge. His declaration appears to be based entirely on hearsay, whether he is recounting what he heard from other officers or merely stating in different words what he read in the I-213 report. Even within the declaration, SDDO Draves does not attribute his assertion of what took place to any identified ICE/ERO agents. And while he says that he makes the declaration, in part, based on "information provided by other agents and officers," *id.* ¶ 3, he does not state that he even spoke to DO Kautz or SDDO Wederquist about Abdulai's arrest. So, the Court does not find the statements about Abdulai's arrest in SDDO Graves's declaration to be persuasive evidence.

Accordingly, the Court finds by a preponderance of the evidence that Respondents arrested Abdulai first and then issued the I-200 arrest warrant after the fact. Therefore, Abdulai was not arrested pursuant to any warrant, and his arrest is lawful only if Respondents had the authority to arrest him without a warrant. *See Jaminton R.B. v. Mullin*, No. 26-cv-3091 (ECT/JFD), 2026 WL 2350324, at *2–3 (D. Minn. Aug. 13, 2026) (concluding that the petitioner was arrested without a warrant where the record did not support a conclusion that the warrant was issued prior to the arrest); *see also Nelson E.T.N. v. Venturella*, No. 26-cv-3541 (JRT/DLM), 2026 WL 2364527, at *2 (D. Minn. Aug. 14, 2026) (concluding that the petitioner's detention was unlawful where no persuasive

evidence was submitted to the court indicating that the sequencing of the NTA, Form I-200 arrest warrant, and arrest were appropriate).[5]

***Warrantless Arrest Authority***

Because Abdulai was not arrested pursuant to a valid warrant, the Court must determine next whether he was arrested lawfully without a warrant.[6] As noted above, under 8 U.S.C. § 1357(a)(2), an immigration officer may make a warrantless arrest an alien if there is probable cause to believe that (1) he is in the United States in violation of immigration laws and regulations, and (2) he is likely to escape before a warrant can be obtained for his arrest. Nothing suggests that Respondents had probable cause to believe that Abdulai was likely to escape before a warrant could be obtained for his arrest. Indeed, Respondents present no argument suggesting that the requirements of § 1357(a)(2) are satisfied in this case. Resp. at 3 ("Because Petitioner was arrested with a valid warrant, no analysis of the Warrantless Arrest Statute, 8 U.S.C. § 1357(a)(2), is necessary.").

In fact, the record suggests that ICE/ERO could have obtained a warrant for Abdulai before they took him into custody on July 15, 2026. He was scheduled to come into the

[5] The Court notes that requiring ICE to secure the warrant prior to arrest places a minimal burden in circumstances such as these. Not only could an authorized officer have issued an I-200 prior to Abdulai's check-in appointment, but they could have done so during the appointment, but prior to Abdulai's arrest.

[6] To the extent Respondents argue that Abdulai's arrest without the issuance of a warrant was lawful because he is subject to mandatory detention pending the outcome of his removal proceedings under 8 U.S.C. § 1225(b)(2)(A), as interpreted in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Court disagrees. *See, e.g.*, *Islamuddin A. v. Blanche*, No. 26-cv-3340 (ECT/JFD), 2026 WL 2546280, at *4 (D. Minn. Aug. 28, 2026) (citing cases).

office that day and ICE/ERO agents had information about his entry into the United States and the prior issuance of an NTA chagrining him with inadmissibility readily available to them. Moreover, on July 15, 2026, DO Kautz and SDDO Wederquist ran records checks and obtained information about Abdulai that would have allowed them to easily locate Abdulai at his home or his job at any point after his scheduled check-in at the Grand Forks ICE/ERO office concluded. *See Walther Ademir A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (explaining that the likely-to-escape probable-cause requirement in § 1357(a)(2) "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizens at another clearly identifiable location").

**ORDER**

Because the Court concludes that Abdulai was not arrested with a valid warrant and because Respondents have not shown that his arrest complied with § 1357(a)(2), Abdulai will be ordered released. *See Felix Alberto J.M. v. Blanche*, No. 26-cv-2944 (LMP/DLM), 2026 WL 1906596, at *1, *3–5 (D. Minn. July 2, 2026); *Walther A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *4 (D. Minn. June 16, 2026); *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 9 (D. Minn. May 26, 2026), ECF No. 9; *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2–3 (D. Minn. June 29, 2026).

Accordingly, **IT IS HEREBY ORDERED THAT**

1. The Verified Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**.

2. Respondents shall release Petitioner Abdulai S. from immigration custody immediately.

3. Respondents shall file an update on the docket within 48 hours of Abdulai S.'s release advising the Court of the date and time of his release.

**Let Judgment be entered accordingly**.

Date: October 26, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge